**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**SOUTHEASTERN REAL ESTATE**
**HOLDINGS, LLC**                                                                    **PLAINTIFF**

**V.**                                         **CIVIL ACTION NO. 2:15-CV-62-KS-MTP**

**COMPANION PROPERTY AND**
**CASUALTY INSURANCE COMPANY**                                **DEFENDANT**

## Memorandum Opinion and Order

For the reasons below, the Court **grants** Defendant's Motion for Partial Summary Judgment [19].

## I. Background

This is a property insurance dispute arising from a tornado. Plaintiff owns a shopping center in Petal, Mississippi, that was allegedly damaged by a tornado on February 10, 2013. Plaintiff retained a public adjuster, who filed a notice of claim on Plaintiff's behalf in June 2013. Defendant obtained its own reports from independent adjusting and engineering firms, and it eventually denied the claim, contending that there was no direct physical damage to the buildings by a covered cause of loss.

Plaintiff filed a Complaint [1] in this Court, alleging that Defendant breached its policy and delayed/denied payment in bad faith. The basis of the parties' dispute can be reduced to a single issue – whether the tornado caused the damage to Plaintiff's buildings. It appears to be undisputed that the policy covers losses caused by a tornado, but that it does not cover losses caused by normal wear-and-tear and substandard construction, which Defendant contends caused the damage. Defendant filed a Motion

for Summary Judgment [19] as to Plaintiff's bad faith claim, which is ripe for review.

## II. STANDARD OF REVEIW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## III. DISCUSSION

Plaintiff argues that Defendant both delayed and denied payment on its claim in bad faith. A bad faith claim is an "independent tort separable in both law and fact from the contract claim asserted under the terms of the policy." *Spansel v. State Farm*

*Fire & Cas. Co.*, 683 F. Supp. 2d 444, 447 (S.D. Miss. 2010). To prove a bad faith claim, one "must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights." *United States Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992); *see also Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008); *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 233 (Miss. 2001). Both elements are "questions of law to be decided by the trial judge." *Jenkins*, 794 So. 2d at 233.

An insurer has no arguable basis for denying payment on a claim if "nothing legal or factual would have arguably justified" its position. *Essinger*, 529 F.3d at 272. Conversely, an insurer has an arguable reason "if there is some credible evidence that supports [its] conclusions on the basis of which [it] acts." *Hood v. Sears Roebuck & Co.*, 532 F. Supp. 2d 795, 803 (S.D. Miss. 2005). "The fact that an insurer's decision to deny benefits may ultimately turn out to be incorrect does not in and of itself warrant an award of punitive damages if the decision was reached in good faith." *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 533 (Miss. 2003). The insurer bears the initial burden of demonstrating "that it had reasonable justifications, either in fact or in law, for its actions. Once an insurance company articulates an arguable or legitimate reason for its [actions], the insured bears the burden of demonstrating that the insurer had no arguable reason." *Essinger*, 529 F.3d at 272.

## A.   *Arguable Reason*

After Defendant received the notice of loss on June 21, 2013, it hired an independent adjusting firm to manage the claim. The independent adjuster performed

3

an initial inspection shortly thereafter. In his report [19-4], he noted "no visible impact marks on the roof where objects would have struck" it. He also noted that the tornado passed "just south" of the location, and that the "south end of the building" exhibited "no visible damage to the stucco." He stated that the "south walls and east section of the building is protected by a large dirt bank and numerous pine trees." However, there were cracks in the exterior stucco. He recommended that Defendant retain an engineer to inspect the roofs and exterior stucco to determine if the damage was caused by the tornado.

Accordingly, Defendant retained Rimkus Consulting Group, Inc., a forensic engineering firm, to evaluate the building and determine whether the damage to the roof coverings and stucco was caused by the tornado. Tony Clark, an Rimkus engineer, inspected the property and produced a report [19-3]. He noted that there was "no apparent wind related damage to nearby buildings, signage, power lines, trees, etc. in proximity" to the subject buildings, and that there were no damaged or displaced exterior wall panels, store front signs, or parapet cap flashings on either building.

The roof was mostly comprised of metal panels, and he noted that there were likewise no "uplifted or separated standing seam roofing panels." But there were some roofing panels that were "deformed downward . . . ." On the portion of roof with asphalt shingles, there were no visible displaced shingles.

On the buildings' stucco exterior, there were vertical and stair-step cracks and separations in the stucco, typically above doors. However, there were no displaced lights or vent covers, and no paint separations or other visible indications of displaced

4

or penetrated stucco. The HVAC units on the roof were "supported with light gauge metal" that could be "displaced with hand pressure," yet there "were no visible indications of significant movement of the compressor units. There were no kinked or deformed refrigerant lines to the compressor units."

Based on these observations, Clark concluded that the "building structures were not racked, twisted, or structurally compromised by wind forces associated with the February 10, 2013 storm event." Rather, he believed that the "undulations" in the metal roof panels were caused by "foot traffic that deformed the panels downward between the roof purlins." He concluded that the cracks in the stucco were caused by "material expansion and contraction," exacerbated in some spots by "the absence of expansion and crack joints" in the stucco.

After Defendant received the engineer's report, the independent adjuster provided a second report [19-4], in which it agreed with the engineer. The independent adjuster noted that the subject buildings were "in a hole, or built below the Highway 42 Bypass that lies between the store and the track of the tornado." In a third report [19-4], the adjuster provided estimates from a contractor to repair the cracks in the stucco and represented that the contractor believed "the failures are not a result of storm damage." Finally, the engineer provided a supplemental report [26-1] after receiving NOAA's weather tracking data, and he reached the same conclusions as in his first report.

As noted above, an insurer has an arguable reason "if there is some credible evidence that supports [its] conclusions on the basis of which [it] acts." *Hood*, 532 F.

Supp. 2d at 803. Here, Defendant received reports from an independent adjuster who did not believe that the damage to the buildings was caused by the tornado. Defendant also received reports from an engineer who likewise concluded that the damage was not caused by the tornado. These reports provided Defendant an arguable reason to deny the claim.[1]

**B.**     *"Biased" Experts*

Plaintiff argues that the Rimkus report is not credible evidence because a Rimkus engineer misrepresented facts in an unrelated case. "[T]he fact that an insurer can point to the report of an independent investigator would not insulate the insurer from liability for punitive damages if there had been collusion between the insurer and the 'independent' investigator, or if the investigator, without the knowledge of the insurance company, intentionally made a false report.." *Sutton v. Northern Ins. Co.*, 681 F. Supp. 1221, 1223 n. 1 (S.D. Miss. 1988). However, a plaintiff must present evidence "from which an inference of mendacity by the investigator can be properly

---

[1] *See Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (insurer had arguable reason for denial of hurricane claim where its adjuster observed loss location, debris line, tree damage, and condition of property and formed opinion from his observations); *Sharpe v. Employers Mut. Cas. Co.*, 808 F.2d 1110, 1113 (5th Cir. 1987) (where insurer relied upon experts' reports which provided reasonable and coherent explanation for damage to roof, there was an arguable basis for its claim decision); *Reece v. State Farm Fire & Cas. Co.*, 684 F. Supp. 140, 146 (N.D. Miss. 1987) (insurer's reliance upon expert's report of incendiary origin for fire was arguable basis for denying claim); *McKneely*, 862 So. 2d at 534-35 (where insurer relied upon expert's report re: medical causation, it had an arguable reason for its actions); *Dey v. State Farm Mut. Auto. Ins. Co.*, 2013 U.S. Dist. LEXIS 181473, at *26 n. 3 (S.D. Miss. Dec. 30, 2013) (insurer's reliance upon doctor's report provided arguable basis for delaying payment of his claim).

drawn." *Id.* "The mere existence of a different opinion as to causation would neither support an inference of [the] investigator's dishonesty nor establish that [the insurer's] reliance on its investigator's conclusions was unreasonable. Absent stronger evidence that the investigator . . . was not only wrong but deliberately misstated facts or conclusions, a credibility issue does not arise." *Id.*

Here, Plaintiff provided no evidence of dishonesty, misrepresentation, or fraud in this case, and one can not reasonably draw the inference that Rimkus engaged in such misconduct here from the fact that it did so in a past, unrelated case. Furthermore, Plaintiff only provided a newspaper article in support of this argument, and "[n]ewspaper articles . . . are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay." *James v. Texas Collin County*, 535 F.3d 365, 374 (5th Cir. 2008) (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005)).

## C.   *Inadequate Investigation*

Plaintiff also argues that Defendant conducted an inadequate investigation. An insurer is "not required to disprove all possible allegations made by a claimant." *McKneely*, 862 So. 2d at 535. Rather, it is "simply required to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation." *Id.*

First, Plaintiff contends that the investigation was inadequate because the Rimkus report contained a factual error concerning the tornado's track. The engineer initially stated that the tornado passed two miles southeast of the property. After

Defendant had denied the claim, Defendant's adjuster admitted [24-7] that the engineer was wrong, and that the tornado "went just south of the property." However, the adjuster also stated that Defendant had "made the correct decision even if the engineer's report puts the storm in the wrong location."

Plaintiff claims that the engineer never reconsidered his report in light of accurate weather tracking information, but Plaintiff is mistaken. The engineer later provided a Supplemental Report [26-1], explaining that NOAA had not published the official weather mapping data for the tornado at the time of his initial report. After considering the new information, he reached the same conclusions as before: the "building structures were not racked, twisted, or structurally compromised by wind forces associated with the February 10, 2013 storm event;" the "undulations" in the metal roof panels were caused by "foot traffic that deformed the panels downward between the roof purlins;" and the cracks in the stucco were caused by "material expansion and contraction," exacerbated by "the absence of expansion and crack joints."

Next, Plaintiff argues that Defendant's investigation was inadequate because it failed to consider that the properties adjacent to the subject property were destroyed by the tornado. Specifically, Plaintiff notes that Mt. Vernon Missionary Baptist Church sustained substantial damages. Plaintiff argues that its building was "clearly" damaged by the tornado because the building next door was damaged by the tornado. However, Plaintiff has provided no evidence to support this massive inferential leap. Furthermore, the newspaper article [24-9] provided by Plaintiff in support of this argument is not admissible evidence of the matters asserted within it. *James*, 535 F.3d

8

at 374.

**D.    *Settlement Offer***

Plaintiff also argues that Defendant's offer of settlement contingent upon settlement of an unrelated case constitutes bad faith conduct after suit has been filed. Plaintiff cited no precedent in support of this argument, and this federal Court declines to create a new rule of Mississippi insurance law.[2]

**E.    *Summary Judgment Premature***

Finally, Plaintiff argues that Defendant's motion is premature because discovery is ongoing and Defendant's post-denial litigation conduct is relevant to the bad faith claim. However, Plaintiff did not even refer to Rule 56(d), much less attempt to satisfy its requirements. *See* FED. R. CIV. P. 56(d) (court may defer consideration of motion for summary judgment if nonmovant shows that, for specified reasons, it cannot present facts essential to justify its opposition). Therefore, to the extent Plaintiff's argument in briefing constitutes a Rule 56(d) motion, it is denied.

## IV. CONCLUSION

In summary, Plaintiff presented no evidence whatsoever that Defendant committed any bad faith conduct, and Defendant presented credible evidence in support of its coverage decision. An insurer has an arguable reason for its coverage

---

[2]*Sobley v. S. Natural Gas Co.*, cited by Plaintiff, only holds that "evidence of post-denial conduct by the insurer is relevant under Mississippi law to establish a claim for bad faith denial of insurance coverage . . . ." 302 F.3d 325, 335 (5th Cir. 2000). It does not provide that a settlement offer contingent upon the settlement of an unrelated case constitutes bad faith conduct.

decision "if there is some credible evidence that supports [the] conclusions on the basis of which [it] acts." *Hood*, 532 F. Supp. 2d at 803. "The existence of a viable dispute means that both sides had arguable reasons to litigate the issue." *Id.* That being the case, Defendant did not act in bad faith. The Court **grants** Defendant's Motion for Partial Summary Judgment [19].

SO ORDERED AND ADJUDGED, on this, the 1st day of March, 2016.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE